



FILED

Jul 06 2026, 10:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

In the Matter of the Paternity of A.R.D.:

J.B. (Father),

*Appellant-Petitioner*

v.

D.D. (Mother),

*Appellee-Respondent*

---

July 6, 2026

Court of Appeals Case No.
26A-JP-92

Appeal from the Clay Circuit Court

The Honorable David O. Thomas, Judge

Trial Court Cause No.
11C01-1202-JP-39

---

**Opinion by Judge Bradford**

Chief Judge Tavitas and Judge Felix concur.

**Bradford, Judge.**

## Case Summary

J.B. ("Father") and D.D. ("Mother") are the parents of A.R.D. ("Child"). Mother and Father have been engaged in litigation relating to custody, visitation, and/or child support since 2012. During the course of the underlying proceedings, Father has amassed a significant child-support arrearage, the balance of which has been continuing at a level near or above $10,000.00 for several years. Father has also failed to comply with discovery requests filed by Mother in relation to their ongoing disputes. On February 17 and July 19, 2023, Father was alleged to be in contempt of court. Father subsequently alleged that Mother was also in contempt of the trial court's order regarding visitation.

Following an evidentiary hearing, on December 11, 2025, the trial court declined to find Mother in contempt but found Father to be in contempt. The trial court found that Father's contempt was willful and sanctioned him to ten days in the Clay County Justice Center ("the Jail"). The trial court stated that Father could purge his contempt and avoid incarceration by paying $10,000.00 towards his child-support arrearage at any point before his period of incarceration was scheduled to begin or during his incarceration. The trial court also ordered Father to pay $2000.00 towards Mother's attorney's fees.

Father contends that the trial court abused its discretion in sanctioning him to a ten-day sentence in the Jail. Concluding otherwise, we affirm.

## Facts and Procedural History

[3] Mother and Father are the parents of Child. Father's paternity was established in September of 2012, after which the trial court ordered him to pay child support retroactive to February 16, 2012. Mother and Father have continued to litigate matters relating to custody, visitation, and child support since 2012.

[4] On February 17, 2023, the State of Indiana[1] alleged that Father was in contempt of court. On July 19, 2023, Mother moved for sanctions and petitioned to have Father found in contempt. On November 1, 2023, Mother moved to compel Father to complete discovery and for attorney's fees. Mother's second motion for sanctions was filed in July of 2024. On or about January 28, 2025, Mother filed her "third motion for sanctions and request for attorney fees[.]" Appellant's App. Vol. II p. 56 (emphasis omitted). In this motion, Mother asserted that Father had been served with discovery requests "on or about July 19, 2023," but had "failed to respond to discovery." Appellant's App. Vol. II p. 56. Mother requested an award of attorney's fees as a sanction for Father's failure to comply with her discovery requests, arguing that "it has been over eighteen (18) months since Father was first served with

---

[1] The State initially represented Mother in the child-support and contempt proceedings. Eventually, however, Mother decided to retain private counsel, at which time the State's involvement in the matter largely ended.

[d]iscovery to which he has had ample time to gather and produce all the requested documents." Appellant's App. Vol. II p. 57.

[5] On January 29, 2025, the State, by and through the Clay County Child Support Division, filed an affidavit indicating that Father was in $12,369.82 in arrears of his child-support obligation. On April 10, 2025, Father alleged that Mother was in contempt. On September 10, 2025, the trial court ordered Father

> to provide (1) a complete tax return for the year 2020, (2) a complete tax return for the year 2021, [and] (3) the bank statement for June of 2023 which allegedly is omitted from the previously discovery responses. Father is also ordered to provide (4) all electronic account transactions from March 29, 2019, through the present.

Appellant's App. Vol. II p. 61. The trial court further ordered that "[s]hould Father fail to comply with this discovery request, he will be subject to sanctions at the upcoming hearing." Appellant's App. Vol. II p. 61.

[6] On October 20, 2025, the State filed an "[a]ffidavit of [a]rrears showing [Father's child support] arrearage at that point was $11,294.82." Appellant's App. Vol. II p. 63. Two days later, the trial court conducted an evidentiary hearing on the competing contempt allegations. In an order dated December 11, 2025, the trial court referenced the State's affidavit and noted that "[t]he child support arrearage in this approximate amount has been outstanding for many years[.]" Appellant's App. Vol. II p. 63. The trial court declined to find Mother in contempt but found

Father in contempt for two reasons: (A) failing to pay child support as previously ordered extending back to at least March 9, 2021, where Father was ordered to pay $75 per week and an additional $10 per week towards the arrearage, and (B) Father's failure to comply with discovery, as ordered most recently on September 10, 2025.

Appellant's App. Vol. II p. 64. The trial court found that "there [was] misconduct by Father." Appellant's App. Vol. II p. 65. The trial court further found that Father's misconduct was willful, stating that

> [w]ith regard to the willfullness [(*sic*)] of Father's contempt, Father testified at the hearing that he is seeking disability and that this should preclude him from being punished for his contempt. Yet the Court observed and notes the following factors which show Father is not disabled to the point of being incapable to earn income through employment:
>
> (A) Father walked into and left the Courtroom with no apparent physical impediment,
> (B) Father testified and reasoned at length throughout the proceeding,
> (C) The exhibits showed Father was able to make multiple purchases of on-line computer games and buy motorcycle parts,
> (D) Father was able to file a pro se contempt affidavit with the Court, and
> (E) There are multiple documentations of Father ordering expensive food.

Appellant's App. Vol. II p. 65.

[7] As a penalty for Father's contemptuous behavior, the trial court "[s]entence[d him] to 10 actual days of incarceration at [the Jail], to commence on Monday,

December 29, 2025." Appellant's App. Vol. II p. 64. The trial court noted that the reasons supporting the penalty included

> (1) the child support arrearage is substantial,
> (2) the arrearage has been continuing at that approximate amount for several years,
> (3) Father wholly failed to participate in discovery as previously ordered,
> (4) Father filed a misleading Affidavit of Contempt against Mother during the pendency of this action, alleging that he was denied visitation when in fact, Father had agreed on February 24, 2021[,] that his visitation would be suspended, and where this mediated agreement resulted in a Court Order,
> (5) Mother demonstrated through evidence that Father has spent money on frivolous expenses since the filing of the contempt affidavit, and Father has received substantial income tax refunds during this same time frame and failed to apply these to his support arrearage,
> (6) Father incredibly argued in his Affidavit of Contempt that the child support arrearage contempt petition was "asinine" and that Mother was "dragging out this matter" and "using egregious extensions to file more billing hours"; and
> (7) Father petitioned multiple times for continuances, causing this action to pend for more than two years.

Appellant's App. Vol. II p. 64. The trial court ordered, however, that "[s]hould Father pay the $10,000.00 child support arrearage prior to his first incarceration date of December 29, 2025, the Court will automatically suspend his incarceration." Appellant's App. Vol. II p. 64. The trial court awarded Mother attorney's fees in the amount of $2000.00, and further ordered that

> "[i]f Father fails to pay this amount prior to his incarceration, the Court will also accept a $10,000.00 cash purge bond for his

release during incarceration. In either case, the Clerk is ordered to convey the $10,000.00 payment to Mother's counsel for distribution first to the attorney fee … and the $8,000 remainder to Mother towards the child support arrearage, and credit Father $8,000.00 towards the child support arrearage.

Appellant's App. Vol. II p. 64.

## Discussion and Decision

[8] At the outset, we note that Mother has not filed an appellee's brief.

> When an appellee has not filed an answer brief, we need not undertake the burden of developing an argument on the appellee's behalf. Rather, we may reverse the trial court if the appellant presents a case of prima facie error. Prima facie error means at first sight, on first appearance, or on the face of it. If an appellant does not meet this burden, we will affirm.

*Henderson v. Henderson*, 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010) (internal citations omitted).

[9] Father contends that the trial court abused its discretion in ordering him to serve ten days in the Jail after finding him in contempt of court.

> The determination of whether a party is in contempt of court is generally a matter within the sound discretion of the trial court. Indirect contempt, or civil contempt, is the willful disobedience of any lawfully entered court order of which the offender has notice.… We will not reverse a trial court's contempt finding unless there is no evidence or inference therefrom to support it.

*J.S. v. W.K.*, 62 N.E.3d 1, 6 (Ind. Ct. App. 2016) (internal quotation and citations omitted). Stated differently, "[i]f the evidence and all reasonable inferences which may be drawn therefrom support the trial court's decision, that decision stands." *In re Guardianship of C.M.W.*, 755 N.E.2d 644, 650 (Ind. Ct. App. 2001). Furthermore, "[i]n reviewing a contempt judgment we will not reweigh evidence or judge credibility of witnesses." *Id.*

In a civil contempt proceeding, the primary objective is not to punish, but rather, to coerce action or to compensate the aggrieved party. In such cases, imprisonment may be imposed in order to coerce compliance with the court order…. If the court uses imprisonment to coerce the defendant into doing an affirmative act, the court must provide that the imprisonment cease as soon as the act is done. A jail sentence for civil contempt must be coercive rather than punitive in nature, and, to avoid being purely punitive, a contempt order must offer an opportunity for the recalcitrant party to purge himself or herself of the contempt.

*Reed v. Cassady*, 27 N.E.3d 1104, 1114 (Ind. Ct. App. 2015) (internal citations omitted), *trans. denied*.

In challenging the trial court's order finding him in contempt and sanctioning him to ten days in the Jail, Father likens his case to *Pettit v. Pettit*, 626 N.E.2d 444 (Ind. 1993). In *Pettit*, Appellant was found in contempt for his failure to pay child support. 626 N.E.2d at 445. Appellant appealed, arguing that the evidence was insufficient to sustain the contempt finding. *Id.* On appeal, the Indiana Supreme Court noted that

[Appellant] testified that he was aware that he was in arrears and had no sources other than borrowing to pay it. He testified that a bank had rejected his loan application because he and his present wife did not have enough income, and therefore, his parents would be the only possible source of a loan. However, there was no evidence that his parents were willing or able to make the loan and, of course, they were not obligated to do so. In short, there was no evidence that [Appellant's] failure to pay was willful.

*Id.* at 448. In reaching this conclusion the Indiana Supreme Court noted that "[c]ontempt is not appropriate unless the parent has the ability to pay the support due and his failure to do so was willful." *Id.*

[12] Father argues that his "situation is like those [(*sic*)] in *Pettit*." Appellant's Br. p. 14. Father testified during the evidentiary hearing that he suffers from various medical conditions, which make it difficult for him to work and require financial support from family members. Specifically, he testified that he suffers from an autoimmune deficiency, degenerative-disc disease, ulcerative colitis, and pancreatitis. Father claimed that he had "been hospitalized numerous times" and that his health issues have "been going on for quite some time." Tr. Vol. II p. 26. The trial court, however, was not required to believe Father's self-serving testimony and apparently did not. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004) ("As a general rule, factfinders are not required to believe a witness's testimony even when it is uncontradicted.").

[13] In relation to Father's ability to pay child support, the trial court heard evidence detailing a number of purchases made by Father for shopping and entertainment, laser tag, video games, DoorDash, motorcycle parts, Uber, and

television subscriptions that were alleged to have been made during periods when Father was not paying child support for Child. Mother's counsel classified these expenses as "[f]rivolous expenses, just absolutely frivolous expenses, while he completely ignores his court-ordered obligation." Tr. Vol. II p. 49. With respect to potential income, while Father claimed to be unable to work due to health complications, he also claimed to "work for [him]self." Tr. Vol. II p. 20. The record indicated that Father had been well enough to work, at least some, in 2025, with Father acknowledging that he had completed work on three occasions for an individual named "Bert" in Florida in 2025 and had been paid "over 3,000 but less than 5,000" in cash each time. Tr. Vol. II pp. 24, 25. The record further indicates that Father had also received substantial tax refunds of $10,974.00[2] in 2020, $5745.00 in 2022, and $6188.00 in 2023. Additionally, Mother testified that Father had previously demonstrated an ability to pay portions of his child-support arrearage when facing arrest if he had not done so.

[14] The trial court found that Father had committed misconduct by failing to satisfy his child-support obligation and by failing to respond to discovery when ordered to do so by the trial court. The trial court also found that this misconduct was willful. Based on these findings, the trial court found Father to be in contempt of court and sanctioned him to ten days of incarceration in the Jail. The

---

[2] Father claimed that he had to "pay back" a portion—"just over $1,000, maybe 1,500"—of the tax-return funds received in 2020. Tr. Vol. II p. 27. Again, the trial court was not required to believe Father's testimony in this regard. *See Thompson*, 804 N.E.2d at 1149.

evidence most favorable to the trial court's order supports its finding that Father had willfully failed to satisfy his child-support obligation for many years and had willfully failed to comply with the trial court's orders relating to discovery. Again, "[w]e will not reverse a trial court's contempt finding unless there is no evidence or inference therefrom to support it." *J.S.*, 62 N.E.3d at 6. Furthermore, the trial court's order indicated that Father could avoid incarceration altogether or cause his incarceration to cease by paying $10,000.00 towards his outstanding obligation. As such, the trial court's order granted Father the opportunity to purge his contempt without incarceration. *Reed*, 27 N.E.3d at 1114 (providing that a contempt order must offer an opportunity for the recalcitrant party to purge himself or herself of the contempt).

[15] Based on the facts and circumstances of this case, we cannot say that the trial court abused its discretion in finding Father to be in contempt or in sanctioning him to ten days of incarceration in the Jail. Father's argument to the contrary amounts to nothing more than a request for this court to reweigh the evidence, which we will not do. *In re Guardianship of C.M.W.*, 755 N.E.2d at 650.

[16] The judgment of the trial court is affirmed.

Tavitas, C.J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

Faith E. Alvarez
Alvarez Legal, LLC
Indianapolis, Indiana